UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENZEL SAMONTA RIVERS,

            Plaintiff,

v.

MATTHEW BURNS, ROBERT RYMARKEWICZ, WAYNE BAUER, EMILY PROPSON, MAKDA FESSAHAYE, KEVIN CARR, SHANNON PATROLLE, RANDELL HEPP, ANDREW LARSON, JOSEPH FALKE, and ALFONZO LAMBERT,

            Defendants.

Case No. 21-CV-833-JPS

**ORDER**

      Plaintiff Denzel Samonta Rivers, an inmate confined at Green Bay Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated their[1] constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens their complaint; it also disposes of Plaintiff's other pending motions.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

      The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when they filed their complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with their case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial

---

[1] Plaintiff identifies as transgender. Because Plaintiff did not specify their preferred pronoun, the Court will default to "they" and "their."

filing fee. 28 U.S.C. § 1915(b)(1). They must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 12, 2021, the Court ordered Plaintiff to pay an initial partial filing fee of $78.27. ECF No. 11. Plaintiff paid that fee on September 13, 2021 and again on September 20, 2021. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 3. They must pay the remainder of the filing fee over time in the manner explained at the end of this Order.[2]

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th

---

[2]The Court originally ordered Plaintiff to pay the initial partial filing fee by September 13, 2021. ECF No. 11. Plaintiff paid the fee on September 13, 2021. However, on September 15, 2021, Plaintiff submitted a motion to extend the time in which to pay the initial partial filing fee, stating that they had been placed on observation without access to mail. ECF No. 14. Before the Court could address the motion, Plaintiff paid a second initial partial filing fee on September 20, 2021. Accordingly, the Court will deny as moot the motion to extend and accept Plaintiff's late payment, and credit both of Plaintiff's payments toward his filing fee.

Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived them of a right secured by the Constitution or the laws of the United States and that whoever deprived them of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

At all relevant times, Plaintiffs was a self-identifying male-to-female transgender inmate housed at Waupun Correctional Institution ("WCI") in Waupun, Wisconsin. ECF No. 1. Starting from at least January 13, 2021, Plaintiff was housed in a segregated unit. *Id.* at 2. From January 13, 2021 through February 16, 2021, Plaintiff sent letters to the following Defendants, in which Plaintiff informed them that Plaintiff was a "self-identifying [] transgender" who was required to "shower alone and seek to be kept safe from non-transgender/L.G.B.T.Q. inmates:" Randell Hepp ("Hepp"), Emily Propson ("Propson"), Makda Fessahaye ("Fessahaye"), Kevin Carr

("Carr"), Shannon Patrolle ("Patrolle"), Matthew Burns ("Burns"), Joseph Falke ("Falke"), Robert Rymarkewicz ("Rymarkewicz"), and Wayne Bauer ("Bauer"). *Id.* at 2–5. On February 18, 2021, Plaintiff was removed from segregation and placed in the northwest cell hall. *Id.* at 5. Officials at WCI had already placed a "shower alone" restriction on Plaintiff, a copy of which was posted in the sergeant cage in the northwest cell hall. *Id.*

On March 15, 2021, Plaintiff began having difficulties with other inmates (specifically, those involved in gangs) in the northwest cell hall due to Plaintiff being transgender. *Id.* at 6. On March 19, 2021, Plaintiff submitted a complaint about this to Bauer. *Id.* At some point in March 2021, Defendant Andrew Larson ("Larson") pulled Plaintiff from their cell to discuss an unrelated matter. *Id.* During this meeting, Plaintiff informed Larson about the trouble they were having with other inmates. *Id.* Larsen allegedly told Plaintiff that he would move Plaintiff to another cell hall, but he did not do so. *Id.*

On April 27, 2021, during second shift, Defendant Alfonzo Lambert ("Lambert") opened Plaintiff's cell as to allow Plaintiff to shower with other inmates. *Id.* at 7. During the shower, Plaintiff was attacked by another inmate, alleged gang member, C.H.[3] *Id.* Larson took photos of Plaintiff's injuries, and Plaintiff received treatment from various WCI medical and dental staff. *Id.* at 7–8.

---

[3]While Plaintiff discusses this inmate by name in their complaint, Plaintiff later filed a motion requesting that this inmate be referred to by the initials "C.H." ECF No. 15. The Court restricted access to the complaint when it was filed. The Court will also grant Plaintiff's motion. From this Order forward, all references to this inmate will be notated as "C.H." The Court will also restrict access so that only the parties have access to Plaintiff's motion, ECF No. 15, which names C.H. in full.

Plaintiff now brings suit alleging that all Defendants had knowledge of the risks Plaintiff faced during showers, disregarded such risks, and, thereby, failed to protect Plaintiff. *Id.* at 9–10.

### 2.3 Analysis

The Eighth Amendment protects prisoners against the infliction of cruel and unusual punishment. *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners." *Id.* But the Eighth Amendment is not violated every time an inmate gets attacked by another inmate; prisons, after all, are dangerous places by their nature. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Thus, "an inmate has no claim 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Once a prison official knows about a serious risk of harm, he has an obligation "to take reasonable measures to abate it." *Id.* (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)). An official's response may be reasonable even if it does not prevent the harm. *Id.*

Further, Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.*

The Court begins by dismissing Hepp, Propson, Fessahaye, Carr, Patrolle, Burns, Falke, Rymarkewicz, and Bauer from this action. Plaintiff does not allege their personal involvement in the harms that befell Plaintiff. While they all may have been aware of the risks to Plaintiff, it appears that those who could took steps to protect Plaintiff, specifically by granting and posting Plaintiff's shower-alone restriction.

As to Larson, Plaintiff told Larsen that Plaintiff was having issues with other inmates, and Larson allegedly told Plaintiff that he would move Plaintiff to another cell hall but failed to do so. While the connection between Larsen's failure to move Plaintiff and Plaintiff being beaten in the shower may be causally attenuated, at the screening stage, the Court will allow this claim to proceed.

Finally, Plaintiff may proceed on a claim against Lambert. Plaintiff alleges that Lambert had knowledge of Plaintiff's shower-alone restriction but opened the door to Plaintiff's cell to allow Plaintiff to shower with other inmates.

3.  **MOTION TO APPOINT COUNSEL**

Plaintiff has also brought a motion to appoint counsel. ECF No. 18. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally— exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint

counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See,*

*e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of pro se prisoner litigation in this District.[4] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were § 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of § 1983 lawsuits has skyrocketed. About 300 § 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, § 1983 actions numbered 385, in 2017 it ballooned to 498, and in 2018 it grew to 549. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district

---

[4]Although non-prisoner pro se litigants may also be considered for the appointment of counsel under § 1915, the Court does not address that set of pro se litigants here for a few reasons. First, the volume of non-prisoner pro se litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of pro bono counsel, which they do with regularity.

courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff has submitted evidence regarding the three lawyers that they contacted to represent them in this matter. ECF No. 18-1. None of those lawyers responded to Plaintiff. ECF No. 18 at 1. Plaintiff could have done more to secure counsel, but, even if they had, the Court's analysis does not end there.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds their capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d at 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to

another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of

Page 12 of 17
Case 2:21-cv-00833-JPS   Filed 03/14/22   Page 12 of 17   Document 25

counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that they cannot litigate or try this matter competently on their own. Plaintiff states that (1) they are unable to afford counsel, (2) they are unable to fully represent themself from inside prison and without legal expertise and research ability, and (3) a lawyer would be better able to present legal arguments and research. ECF No. 18.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are better positioned to successfully raise defenses. But Plaintiff's lack of legal training brings them in line with practically every other prisoner litigating in this Court. Further, the Court will assist Plaintiff in this regard (as it does with all prisoner litigants) by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Similarly, nearly all prisoner litigants face the challenge of being unable to fact-find and interview witnesses from prison. The Court will deny Plaintiff's motion to appoint counsel.

4.     **MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff has also brought a motion for a preliminary injunction. ECF No. 7. Therein, they request that the Court order that they be separated from the inmate who beat them in the shower, C.H. *Id.* Since filing this motion, Plaintiff was transferred from WCI to Green Bay Correctional Institution. Accordingly, the Court will deny this motion as moot.

Plaintiff also filed a motion to seal their motion for a preliminary injunction. ECF No. 6. Based on Plaintiff's later motion, which the Court will grant, *see supra* Section 2.2 at n.3, ECF No. 15, the Court will also grant the motion to seal, in part, to restrict access to the motion to only the parties.

5. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** failure to protect in violation of the Eighth Amendment by Alfonzo Lambert and Andrew Larson.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting their case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Finally, the Court will address Plaintiff's motion to proceed before a magistrate judge. ECF No. 16. The Clerk of Court received Plaintiff's magistrate judge jurisdiction form. ECF No. 8. Only the Clerk of Court has access to this document. Presumably, however, given Plaintiff's motion, Plaintiff has consented to proceed before a magistrate judge. Once Defendants appear and submit their forms, the Clerk of Court will determine whether to reassign this case to the magistrate judge, as consent to do so is required from all parties. The Court will deny Plaintiff's motion as moot.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 3, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for an extension of time, ECF No. 14, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 18, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for a preliminary injunction, ECF No. 7, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to seal, ECF No. 6, be and the same is hereby **GRANTED in part** and that the Clerk of Court **RESTRICT** ECF No. 7;

**IT IS FURTHER ORDERED** that Plaintiff's motion to use one party's initials, ECF No. 15, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of Court **RESTRICT** Plaintiff's motion to use one party's initials, ECF No. 15;

**IT IS FURTHER ORDERED** that Plaintiff's motion to proceed before a magistrate judge, ECF No. 16, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Matthew Burns, Robert Rymarkewicz, Wayne Bauer, Emily Propson, Makda Fessahaye, Kevin Carr, Shannon Patrolle, Randell Hepp, and Joseph Falke be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted

to the Wisconsin Department of Justice for service on Defendants Alfonzo Lambert and Andrew Larson;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from their institution trust account the $193.46 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with their remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 14th day of March, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Prisoners who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.